UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: KENNETH E. MORGAN, DEBTOR                                  06-12272-DWH
                                                                   CHAPTER 11

KENNETH E. MORGAN                                                  PLAINTIFF

VERSUS                                                   ADV. PROC. NO. 06-1168

REGIONS BANK, f/k/a UNION PLANTERS
BANK, NATIONAL ASSOCIATION                                         DEFENDANT

OPINION

On consideration before the court is a complaint for injunctive relief and declaratory judgment which was filed by the debtor, Kenneth E. Morgan (Morgan or debtor); an answer to said complaint having been filed by the defendant, Regions Bank, f/k/a Union Planters Bank, National Association (Regions Bank); and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (B), and (O).

II.

The debtor, Kenneth E. Morgan, filed a voluntary Chapter 11 bankruptcy petition on September 20, 2006. On that same date, Morgan filed the above captioned adversary proceeding against Regions Bank which holds a deed of trust encumbering certain real property that was formerly owned by Morgan. (On August 12, 2005, Morgan conveyed the property to HMR

Enterprises, LLC, a Mississippi Limited Liability Company. Morgan at one time was a member of the LLC along with one of his attorneys, Dewitt T. Hicks, and William S. Rowland.)

The aforementioned real property, which will be referred to in this opnion as "subject property," is a residential subdivision containing seventeen three bedroom houses located in the City of Starkville, Mississippi. The deed of trust, encumbering the property, was initially executed by Morgan on May 16, 2001, in favor of Union Planters Bank, the predecessor to Regions Bank. The deed of trust secured a promissory note in the original principal sum of $1,079,379.50, on which Morgan remains personally liable.

The above captioned adversary proceeding sought to enjoin Regions Bank from foreclosing its deed of trust which was scheduled to occur between legal hours on September 20, 2006. The court conducted an emergency telephonic hearing prior to the time of the foreclosure. Participating in the hearing were Morgan, his attorneys, and the attorney representing Regions Bank. The court was advised that the property was being reconveyed by HMR Enterprises, LLC, to Morgan, and that there was substantial equity in the property in excess of the indebtedness owed to Regions Bank.

Having considered the presentations, the court determined that a temporary restraining order should be issued which allowed the foreclosure sale to occur, but which restrained the consummation of the sale until a hearing could be conducted on the preliminary injunction request included in Morgan's complaint. The "follow-up" hearing was scheduled and conducted on September 27, 2006.

III.

On the date that the debtor filed his bankruptcy case, the legal title to the subject real property had not been revested in him. This, however, was underway. A quitclaim deed, reconveying the property from HMR Enterprises, LLC, to Morgan, dated September 25, 2006, was received in evidence at the preliminary injunction hearing as Debtor's Exhibit 1. The conveyance was subject to the court's approval of a release to be given by Morgan to HMR Enterprises, LLC, and/or William S. Rowland, releasing them from any liability as to the debts and taxes that might be owed on the subject property. The proposed release was received in evidence as Debtor's Exhibit 2.

Morgan has a significant interest in the pending foreclosure contemplated by Regions Bank since he would remain personally liable for any deficiency that might be created by the foreclosure <u>regardless of whether he holds legal title to the property.</u> This proved to be a legitimate concern that quickly became a reality. Regions Bank, despite the fact that it had recently commissioned an appraisal of the subject property which reflected a value of $1,000,000.00, accepted a foreclosure bid of only $755,000.00. This, of course, potentially established a deficiency that would be owed by Morgan in the sum of $217,065.56. This will be discussed in greater detail hereinbelow.

IV.

Relying on *Matter of Pine Tree, Ltd.*, 876 F.2d 34 (5th Cir. 1989), Regions Bank asserts that this court should not restrain or enjoin the pending foreclosure because legal title to the encumbered property has not been fully revested in the debtor. The factual scenario in *Pine Tree* is distinguishable from the facts in this proceeding, but, more importantly, the efficacy of the

bankruptcy automatic stay, which dictated the outcome in *Pine Tree*, has no bearing on this proceeding. Morgan sought injunctive relief, not the activation of the automatic stay, to halt the foreclosure in order to prevent his exposure to substantial personal liability. He also contends that the subject property has a much higher value than Regions Bank would realize from a foreclosure sale. The evidence presented to the court fully substantiates Morgan's position.

Regions Bank's reliance on *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984), is also not persuasive to this court. In *Albany Partners*, the bankruptcy court annulled the automatic stay retroactive to the date of the bankruptcy filing for the benefit of a foreclosing creditor where the Chapter 11 debtor was asserting that it was the recipient of an unrecorded transfer. To repeat what was stated hereinabove, Morgan has not chosen to rely on the automatic stay, but has affirmatively sought injunctive relief. He has a legitimate right to protect himself against a deficiency that could be created by an improvidently conducted foreclosure sale.

V.

At the conclusion of the hearing on Morgan's request for a temporary restraining order, the court employed a procedure that over the years has worked to the advantage of both debtors and creditors. The court restrained the consummation of the foreclosure sale, but allowed the actual sale to take place with the admonition that it was subject to the approval of the court, as well as, the further consideration of the injunctive relief requested in Morgan's complaint. This condition was related to the prospective bidders at the sale by Regions Bank's attorney. If further injunctive relief was not merited, the sale could be consummated without Regions Bank having to repost or readvertise the sale, thus avoiding the time and expenses that would be associated therewith.

Prior to conducting the foreclosure sale, Regions Bank had the benefit of two appraisals. The first was the appraisal performed by Ken Nixon on June 12, 2001, for the benefit of Union Planters Bank when Morgan's loan was closed. This appraisal valued the property in the sum of $1,377,000.00. The second appraisal was undertaken by Brad Belue on August 2, 2006, for the benefit of Regions Bank, and valued the property at $1,000,000.00.

Regions Bank opened the foreclosure sale bidding at the sum of $750,000.00. The property was then sold to a Mr. McClendon for $755,000.00. Ironically, Morgan testified that earlier he had been discussing the sale of the property to McClendon, but that when McClendon learned of the foreclosure, he terminated his discussions with Morgan, obviously anticipating that he could acquire the property for a lower price at the foreclosure sale. This conduct is a "red flag" indicator that the foreclosure sale produced a deflated price for the property.

Regions Bank appears to have done very little to protect its $972,065.56 security interest in the property, particularly since it was holding a "fresh" appraisal from Belue which exceeded the indebtedness balance by almost $28,000.00. Rather, Regions Bank docilely allowed the property to be sold for $755,000.00, only $5,000.00 more than its opening bid. This would establish a deficiency of $217,065.56 to be borne by Morgan.

Morgan testified that he built the seventeen residential units approximately five years ago at a cost of approximately $68,000.00 per unit. As a part of the completed subdivision, Nixon appraised the units at a per unit price of $81,000.00. In stark contrast, the highest foreclosure bid generated only $44,410.00 per unit.

VI.

In addition to protecting against a deficiency claim, once Morgan regains legal possession of the property, he will hold an asset that potentially offers value to his bankruptcy estate. As noted hereinabove, the appraisal performed by Ken Nixon evaluates this property as of June 12, 2001, in the sum of $1,377,000.00. Nixon testified that property values in Starkville, Mississippi, have been stable to increasing since 2001. Nixon applied the three standard methodologies commonly used in preparing an appraisal, i.e., the income approach, the cost approach, and the market data approach. Using the market data approach, he evaluated one of the residential units at $81,000.00, then multiplied this number by the seventeen units in the subdivision to arrive at his total value. He indicated that his market data evaluation was consistent with his application of the other two approaches.

Brad Belue, utilizing the income approach to valuation, appraised the property as of August 2, 2006, in the sum of $1,000,000.00. Belue was critical of Nixon's appraisal, testifying that Nixon should not have appraised one unit and multiplied that amount times the number of units in the subdivision to arrive at a total valuation for the subdivision as a whole. Nixon had been released from his subpoena earlier and was unavailable to comment on this criticism.

As noted earlier, both of the appraisals were undertaken for the benefit of Regions Bank and its predecessor, Union Planters Bank. Significantly, both appraisals reflect values that exceed the indebtedness currently owed to Regions Bank.

The most persuasive testimony concerning the value of the subject property came from Pryor Spencer Bailey, a realtor with over thirty years experience in developing and marketing properties in the Starkville, Mississippi, area. Bailey indicated that he had inspected the homes

6

in the subdivision, and that all were in good condition. He testified that given a marketing period of twelve months that he could sell these homes at the rate of $90,000.00 per unit and realize a total value of $1,530,000.00. This number would be subject to a 7% sales commission reduction. Bailey indicated that the real estate market in the communities of Starkville, Columbus, and West Point, Mississippi, was extremely favorable due to the ongoing current industrial development near the Golden Triangle Regional Airport. He mentioned specifically the construction of the Severcorr, LLC, facility, and the American Eurocopter facility, both of which are major economic additions to the area. Perhaps most significantly, Starkville is the site of Mississippi State University. Bailey pointed out that the increased enrollment at that institution has spurred the need for available housing for both students and alumni.

Considering all of this factual information, the court is convinced that there is sufficient value in the subject property to fully satisfy the Regions Bank debt, as well as, the claim for delinquent ad valorem taxes. There is additionally the likelihood of a surplus value that could contribute a significant infusion into the debtor's bankruptcy estate. Clearly, there is ample evidence to extend the temporary restraining order into a preliminary injunction.

The court's inquiry, however, will not end here. At the most recent hearing, the court was informed that the Regions Bank indebtedness is accruing interest at the rate of $182.50 per day which amounts to approximately $5,475.00 per month. The debtor will be given a period of thirty days to formulate a plan for the marketing and disposition of the subject property. This will necessarily include a proposal for the use of the rental income that is being generated monthly. The court will set a hearing immediately following this thirty day period to determine whether the preliminary injunction should ripen into a permanent injunction.

In the interim, because the court is convinced that there is sufficient value in this property over and above the claim of Regions Bank, as well as, the delinquent ad valorem taxes, the court will approve the proposed release to be given by the debtor to HMR Enterprises, LLC, and William S. Rowland. From the testimony presented, the court concludes that Morgan has no actual claims against either of these parties, such as a claim for damages, that would constitute an asset of his bankruptcy estate. Morgan will be authorized to execute and deliver the release to HMR Enterprises, LLC, and Rowland. The deed to the Morgan may likewise be recorded.

In summary, the court makes the following conclusions:

1. Regions Bank is preliminarily enjoined from consummating that certain foreclosure sale that this court temporarily restrained on September 20, 2006.

2. A hearing on the permanent injunctive relief requested in the debtor's complaint is hereby set for the 6th day of November, 2006, at 10:00 a..m., at the United States Bankruptcy Court, Aberdeen, Mississippi. At this hearing, the debtor must present evidence of how he proposes to market and sell the subject property. He must present a proposal addressing the contemplated use of the rental income generated by the property. Until the court orders otherwise, the rental income shall be delivered to and held in escrow by Regions Bank.

3. The court hereby authorizes Morgan to execute the release that was presented to the court at the preliminary injunction hearing as Debtor's Exhibit No. 2 in favor of HMR Enterprises, LLC, and William S. Roland, individually. Correspondingly, the deed from HMR Enterprises, LLC, to Morgan shall be recorded in the official

land records of Oktibbeha County, Mississippi, reflecting that the subject property is revested in Morgan.

A separate order will be entered contemporaneously with this opinion.

This the 4th day of October, 2006.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE